# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **DONALD SESSO,** | : | |
|     **Plaintiff,** | : | |
| v. | : | CIVIL ACTION NO. 11-5718 |
| | : | |
| **MERCY SUBURBAN HOSPITAL,** | : | |
|     **Defendant.** | : | |
| | : | |

## MEMORANDUM & ORDER

**RUFE, J.**                                                           **March 13, 2013**

Plaintiff Dr. Donald Sesso alleges that Defendant Mercy Suburban Hospital terminated his employment because of his age, and in retaliation for his complaints of age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA")[1] and the Pennsylvania Human Relation Act ("PHRA").[2] Before the Court is Defendant's Motion for Summary Judgment on all claims.

## I. FACTUAL BACKGROUND

In accordance with this Court's instructions, the parties have submitted a statement of stipulated material facts.[3] The Court summarizes herein only those stipulated facts necessary to its decision.

Donald Sesso was born in 1945. He earned a Doctor of Osteopathic Medicine and certification in Internal Medicine and Diseases of the Chest. From about 1975 until 2003, Dr. Sesso was an employee of Internal Medicine Associates ("IMA"), with medical privileges to treat

---

[1] 29 U.S.C. §§ 621-634.

[2] 43 Pa. Stat. § 951 *et seq.*

[3] See Doc. No. 25, Ex. 1.

inpatients at Mercy Suburban or its predecessor entity, Suburban General. He practiced both pulmonology and internal medicine. On July 1, 2003, Dr. Sesso and the other physicians employed by IMA became full-time employees of a subsidiary of Mercy Suburban, East Norriton Physician Services, Inc. ("ENPS"). Dr. Sesso and a colleague, Dr. Koehler, a gastroenterologist, entered into three-year contracts. They continued to provide outpatient medical care as well as providing inpatient care after becoming employed by ENPS. Under the 2003-2006 contract, Dr. Sesso worked full-time for an annual salary of $135,000.

In 2006, the parties negotiated a new contract. Dr. Sesso requested a renewal of his employment contract, but asked for the new contract to include a small reduction in hours (to 35-40 hours per week), a reduction in weekend and night coverage hours, extra physician help on weekends when the hospital census was over 20 patients, and an increase in hourly pay. CEO Mark Barabas informed Dr. Sesso that he was not in a position to grant a pay raise or add weekend staff, and noted his concern that Dr. Sesso's practice had netted only $151,000 in the 2005 calendar year, which covered the cost of his salary but did not fully cover the cost of his benefits. Ultimately the parties entered into a contract, agreeing that Dr. Sesso would work 26 hours per week, would not be on-call on the weekends, and would receive a salary of $75,000. When Lisa Mallon replaced Barabas as CEO of Defendant, Dr. Sesso informed her that he would prefer more hours. They informally agreed that he would work an additional 4-5 hours per week for hourly pay.

In December 2008, Dr. Sesso initiated discussion about renewal upon expiration of his second contract. In a letter to Ms. Mallon, he indicated overall satisfaction with his duties, but requested an increase in pay and "a gradual reduction in night-call over the next three years."

CFO Peter Kenniff testified to "understanding" that Dr. Sesso's 2006-2009 contract would be "the last contract."[4] Dr. Sesso testified that he remembered Mr. Kenniff and Ms. Mallon expressing their belief that Dr. Sesso would be retiring at the end of his 2006 contract, and the acting Chief Medical Officer, Dr. Wayne Miller remembers Chief Financial Officer Peter Kenniff "talking about the fact that [he and Ms. Mallon] were both thinking along [the] lines" that Sesso was retiring. Nevertheless, the parties did engage in on-going dialogue about the renewal of Dr. Sesso's contract during the first half of 2009.

In late February or early March, Defendant put Mr. Kenniff in charge of negotiating physicians' contracts. Dr. Sesso sent Mr. Kenniff a handwritten note on February 27, 2009, requesting a renewal of his contract for 24-32 hours per week at "hourly compensation which is comparable to my peers." Dr. Sesso offered to expand his pulmonary outpatient office practice, but was told by Mr. Kenniff that there were not enough patients to support doing so, and that increasing a pulmonary practice was not aligned with Defendant's strategic plan.

In March 2009, administrators asked Dr. Sesso whether he could work additional hours while one of his colleagues was on maternity leave. He indicated that he could work an additional 6 ½ hours per week with inpatients, but his blood pressure affected how much "high intensity work" he could add. He estimated that he could see one patient per hour.

On June 30, 2009, Defendant informed Dr. Sesso, then age 63, that it would not renew his contract and that his employment would be terminated as of August 31, 2009. The same letter informed Dr. Sesso that, effective July 1, 2009, Montgomery Asthma, a pulmonology group with

---

[4] Kenniff Dep. 33.

privileges to practice at Defendant, would be providing pulmonary care,[5] and that Defendant was hiring a Hospitalist to support inpatient care.[6] Dr. Sesso was kept on for an additional two months after the end of his contract term to ensure a smooth transition.

Defendant's employees have testified that Dr. Sesso did not have enough pulmonary inpatients to warrant keeping Dr. Sesso on in that role. The hospital was in need of a full-time Hospitalist, and Mr. Kenniff believed Dr. Sesso was unwilling to function in that role. They have also testified that Defendant contracted with a group of seven Intensivists,[7] who had practice privileges at Mercy Suburban, to provide pulmonary and other medical care to patients in the intensive care unit at the hospital. Neither Mercy Suburban nor ENPS hired or assigned a physician to assume Sesso's prior duties in the IMA office or at the Norristown State Hospital. ENPS did hire an additional full-time Hospitalist, Dr. Genevieve Skalak, approximate age 29, who, together with the Intensivists and Montgomery Asthma provided inpatient pulmonary care.

Dr. Sesso complained in March 2009 and possibly again in May 2009 about Defendant's assumption that he would be retiring, and felt, but may not have stated, his belief that his age was a factor in Defendant's decision not to renew his contract.

In August 24, 2004, Dr. Sesso's IMA colleague, Dr. Koehler, then age 70 or 71, who had also entered into a three-year contract with ENPS in 2003, entered into a revised contract to reflect a change from full-time to part-time employment. At the end of his revised contract term,

---

[5] These physicians were not and did not become employees of Suburban or ENPS.

[6] "A hospitalist is a physician who does majority or almost essentially all of his or her work in the hospital taking care of hospitalized patients." Stip. of Material Facts ¶ 13.

[7] Intensivists are specially trained to provide total care to Intensive Care Unit patients. Stip. of Material Facts ¶ 47.

in 2006, he was offered a second three-year employment contract, with a further reduction in responsibilities and salary for the third year of the contract. Dr. Koehler testified that he asked to extend his contract for an additional year after the expiration of the second contract in 2009, and was told that he was expected to retire and that ENPS would not consider retaining him for an additional year. Dr. Koehler retired on June 12, 2009, at age 75 or 76, and ENPS has not hired a gastroenterologist to replace him nor asked other employees to assume his duties.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[9] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[10]

A party moving for summary judgment must support its motion by reference to evidence which is capable of being admissible in a trial.[11] The nonmoving party must "set out specific facts showing a genuine issue for trial."[12] The nonmoving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by

---

[8] Fed. R. Civ. P. 56(c).

[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[10] Id.

[11] Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n. 11 (3d Cir. 1999).

[12] Fed. R. Civ. P. 56(e)(2).

5

demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[13] The facts the nonmovant relies on for these purposes must also be demonstrated by evidence that is capable of being admissible in a trial.[14]

In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[15]

## III.  DISCUSSION

"[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."[16] The PHRA provisions relevant here present no such issue, and accordingly, the Court will generally refer to only the ADEA in this Opinion.

### *Age Based Discrimination Claims*

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[17]

An ADEA discrimination claim may be proven by either direct or indirect evidence of discrimination. Here, the parties dispute whether Dr. Sesso has produced direct evidence of

---

[13] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

[14] Callahan, 182 F.3d at 252 n. 11.

[15] Anderson, 477 U.S. at 255.

[16] Burton v. Teleflex, Inc., – F.3d – No. 11-3752, 2013 WL 616973, at *11 (3d Cir. Feb. 20, 2013)(quoting Slage v. Cnty. of Clarion, 435 F.3d 262, 265 n. 5 (3d Cir. 2006 (internal quotation marks omitted)).

[17] 29 U.S.C. § 623(a)(1).

6

discrimination, with Dr. Sesso arguing that he has put forth direct evidence of age discrimination. However, in light of the Supreme Court's ruling in Gross v. FBL Financial Services, Inc., the Court need not determine whether the evidence Dr. Sesso points to— i.e., statements by the CFO and CEO indicating that they were expecting him to retire at the end of his second contract— is direct or circumstantial evidence of age-based discrimination, as the Supreme Court held that the burden of persuasion regarding the motive for the adverse employment action does not shift to defendants in ADEA cases, even where a plaintiff puts forth direct evidence of age discrimination.[18] To survive summary judgment, then, even if a plaintiff puts forth direct evidence of discrimination, the plaintiff must also submit evidence from which a fact finder could reasonably conclude that age was the but-for cause of the employer's adverse decision."[19] However, Dr. Sesso may use the same evidence to establish a *prima facie* case of discrimination and to discredit Defendant's proffered reasons.[20]

The parties do not dispute that Dr. Sesso is a member of the protected class (he was age 63 at the time the decision was made not to renew his employment agreement) or that he was qualified for the position he sought to retain. At issue is whether the adverse employment action occurred under circumstances giving rise to a plausible inference that age-based discrimination was the but-for reason for that adverse action.[21] Dr. Sesso argues that retirement-related remarks

---

[18] 557 U.S. 167 (2009); see also Kelly v. Moser, Patterson and Sheridan, LLP, 348 F. App'x. 746, 750 n.8 (3d Cir. 2009) ("Because Price Waterhouse does not apply to cases under the ADEA, we do not decide whether Marlin's handwritten note is 'direct evidence' that would place the burden of proof on defendants.").

[19] Gross, 557 U.S. at 177-78.

[20] Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

[21] Gross, 557 U.S. at 177. Plaintiff does not need to put forth evidence that he was replaced by sufficiently younger employees to support an inference of discrimination; such evidence is but one way to support an inference of discrimination.

made by CEO Mallon and CFO Kenniff give rise to a plausible inference that Defendant acted with discriminatory intent. The Court agrees that this evidence is sufficient to establish a prima facie case of age discrimination.

Defendant argues that the decision not to renew Dr. Sesso's contract was an economic and strategic one: Dr. Sesso's outpatient office practice had too few patients, building that practice was not aligned with Defendant's strategic objectives, and with the hiring of Intensivists, there was a decreased need for Dr. Sesso's services as a pulmonologist for intensive care inpatients.[22] A jury reasonably could find that these were the motivating factors. However, there is evidence which suggests that Dr. Sesso was never asked if he was willing to work as a full-time hospitalist or otherwise take on duties more closely aligned with Defendant's strategic plan.[23] Dr. Sesso also asserts that his duties were reassigned to younger doctors, some substantially younger. Viewing the evidence in the light most favorable to the non-moving party, the Court finds that Dr. Sesso has put forth evidence from which a reasonable jury could find that key decision-makers, including the CEO and the CFO, made statements suggesting that they expected Dr. Sesso to retire at the end of his 2006-2009 contract.[24] If the jury credits this and/or other evidence, it could reasonably either disbelieve the decision-makers's asserted, legitimate reasons for terminating Dr. Sesso, or find that statements regarding the expectation that Dr. Sesso would retirement were evidence of a discriminatory animus and that the discriminatory animus

---

[22] Stip. of Material Facts at ¶ 39, 48.

[23] Stip. of Material Facts at ¶ 44.

[24] The parties dispute who the key decision-makers were. This is a dispute over a genuine issue of material fact.

8

was a determinative factor in the non-renewal of Dr. Sesso's contract.[25] The Court finds material issues of fact which necessitate a trial. Accordingly, the Court will deny the Motion for Summary Judgment on the age-discrimination claims.

*Retaliation Claims*

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that 1) he was engaged in protected activity; 2) contemporaneously or subsequently, the defendant took an adverse employment action; and 3) there is a causal link between the protected activity and the adverse action.[26] The Third Circuit generally focuses on two factors for establishing a causal link: "timing and evidence of ongoing antagonism."[27]

Defendant assumes, for the purposes of the Motion, that Dr. Sesso can establish the first two elements, but argues that Dr. Sesso cannot establish the causation element of the *prima facie* case, asserting that he has put forth no evidence that the decision-makers were aware of Dr. Sesso's complaints about age discrimination, and even if they were, that there is no evidence that those complaints motivated their adverse employment decision.

Taking Plaintiff's testimony as true, Dr. Sesso complained to Mr. Miller and Mr. Kenniff in March and possibly also in May 2009 that his age was being improperly considered in the decision regarding his contract renewal.[28] The final decision not to renew his contract was made in May or June 2009. Thus, the timing of his complaint, one-to-three months before he was told

---

[25] See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

[26] Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 508-09 (3d Cir. 2004).

[27] Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001) (citing Farrell v. Planters Life Ins. Co., 206 F.3d 271, 281 (3d Cir. 2000)); Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989) (finding a causal link where discharge occurred two days after notice of the employee's EEOC complaint).

[28] These factual assertions are disputed by Defendant. See Stip. of Material Facts ¶49.

his contract would not be renewed upon expiration, could support a finding of retaliation. However, it is not dispositive here, as Dr. Sesso admits that Defendant continued to negotiate with him in the months leading up to the expiration of his 2006-2009 contract at the end of June 2009, and the decision was made near the end of his contract term.[29] Dr. Sesso points to no evidence of ongoing antagonism which could be attributed to his complaints about age discrimination, nor does he otherwise tie his complaints about age discrimination to the adverse action taken. The Court finds that a reasonable jury could not find that Dr. Sesso was retaliated against because he complained of age discrimination.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is denied as to Dr. Sesso's age discrimination claims, and granted as to Dr. Sesso's retaliation claims.

An appropriate Order follows.

---

[29] Stip. of Material Facts ¶ 50.